# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**THEDRICK EDWARDS**                                          **CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL.**                                          **NO. 15-305-JWD-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on April 24, 2018.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**THEDRICK EDWARDS**                                        **CIVIL ACTION**

**VERSUS**

**BURL CAIN, ET AL.**                                        **NO. 15-305-JWD-RLB**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The State has filed an opposition to the petitioner's application.  *See* R. Docs. 7 and 8.  The petitioner has also supplemented his petition, and the State has filed a response thereto.  *See* R. Docs. 13 and 14.  There is no need for oral argument or for an evidentiary hearing.

On May 14, 2015, the *pro se* petitioner, an inmate confined at the Louisiana State Penitentiary, Angola, Louisiana, filed this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, attacking his 2007 criminal conviction and sentence, entered in 2008, in the Nineteenth Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, on five counts of armed robbery, one count of attempted armed robbery, two counts of aggravated kidnapping, and one count of aggravated rape. The petitioner attacks his conviction on the grounds that his confrontation rights were violated, he was denied an impartial jury, his confession was coerced, and the prosecutor made improper remarks during his closing argument.

### Procedural History

In December of 2007, the petitioner was found guilty of five counts of armed robbery, one count of aggravated rape, and two counts of aggravated kidnapping.  On February 7, 2008, the petitioner was sentenced to 30 years on each count of armed robbery, with said sentences to run

consecutively, and three consecutive life sentences on the counts of aggravated rape and aggravated kidnapping. The petitioner thereafter filed a counseled appeal, and on June 13, 2009 his conviction and sentence were affirmed by the Louisiana First Circuit Court of Appeal. *See State v. Edwards,* 08-2011 (La. App. 1 Cir. 6/12/09), 2009 WL 1655544. Thereafter, the petitioner filed an application for supervisory writs with the Louisiana Supreme Court, which was denied on December 17, 2010. *See State v. Edwards,* 09-1612 (La. 12/17/10), 51 So.3d 27.

On or about December 15, 2011, the petitioner filed an application for post-conviction relief ("PCR"), asserting numerous claims. After the filing of motions and various procedural objections, the trial court denied the petitioner's PCR application on April 26, 2013. The petitioner's writ applications seeking review were denied by the appellate court and by the Louisiana Supreme Court, on March 24, 2014 and February 13, 2015, respectively. On May 14, 2015, the petitioner filed the present application.

## Factual Background

The facts, as accurately summarized in the decision of the Louisiana First Circuit Court of Appeal (*State v. Edwards,* 08-2011 (La. App. 1 Cir. 6/12/09), 2009 WL 1655544), are as follows: On May 13, 2006, at approximately 11:30 p.m., Ryan Eaton, who was a student at Louisiana State University, went to the Circle K on State Street and Highland Road and then drove to the apartment of his girlfriend, G.W., on East Boyd Drive near Nicholson Drive. Eaton turned his vehicle off, opened a beer, and opened the driver's door. As Eaton began to step out of his vehicle, a male subject wearing black clothing and a black bandana across his face (from the nose down) pointed a .45 caliber, black, semiautomatic pistol at Eaton's head and told Eaton to get back into his vehicle and unlock the doors. Another male subject, also armed with a gun, entered the back of Eaton's vehicle after Eaton unlocked the back door. The armed subject who

entered the front of Eaton's vehicle drove away from the complex. The assailants were later identified as the defendant and Joshua Johnson.

The assailants demanded money and ultimately took the victim to an ATM so that he could retrieve cash. Eaton's accounts were depleted, so he was unable to retrieve any cash from the ATM. According to Eaton, the assailants were angry because he did not have any money. Eaton suggested that the assailants take him to his apartment on Bluebonnet Road and take some of his belongings; the assailants agreed.

After they entered the apartment, the assailants blindfolded Eaton, tied his hands together, began rummaging through his apartment, and took several items. The assailants also took Eaton's cellular telephone, turning on the telephone speaker when G.W. called. The assailants instructed Eaton to speak to G.W. calmly and make arrangements for a meeting. G.W. told Eaton that she was at Chelsea's Bar and asked him to meet her there. The assailants led Eaton, at gunpoint, back to his vehicle, put him in the front passenger seat, and drove away from his apartment. According to Eaton, the defendant was driving at this point, and Johnson was in the back seat sitting behind Eaton. They drove to Chelsea's Bar, and when the vehicle stopped, Eaton was able to get a good look at the defendant. The assailants responded to text messages sent by G.W. to Eaton, encouraging her to go back to her apartment.

Eaton and his assailants ultimately drove back to G.W.'s apartment where Easton was instructed, at gunpoint, to knock on the door. By that time, G.W., her roommate R.M., and her friend L.R. were at the apartment. When G.W. answered the door, the defendant and Johnson rushed in behind Eaton. They rummaged through the apartment, finding items to steal. L.R. was vaginally and anally raped at gunpoint and forced to perform oral sex. L.R. was unable to identify her attacker as his face was obscured, but Eaton believed it to be the defendant. R.M.

was dragged upstairs and raped.  R.M. also was unsure of her attacker's identity.  The assailants gathered several items and told Eaton that they would abandon his vehicle nearby.  After the assailants left, Eaton walked out of the apartment and used a passerby's telephone to call for emergency assistance.

Two days later, during the early morning hours of May 15, 2006, two assailants began following Marc Verret as he drove through his apartment complex near State Street.  After Verret parked, the assailants forced entry into his vehicle.  They brandished guns and had bandanas over their faces.  One of the assailants entered the front of Verret's vehicle as Verret slid to the passenger's side, and the other entered the back of the car.  Verret was taken to an ATM, where he withdrew funds and gave them to the assailants.  The assailants exited the vehicle after taking the money and other items.  Verret was able to identify Johnson as one of the armed assailants.

### Standard of Review

The standard of review in this Court is that set forth in 28 U.S.C. § 2254(d).  Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Relief is authorized if a state court has arrived at a conclusion contrary to that reached by the Supreme Court on a question of law or if the state court has decided a case differently than the Supreme Court on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  Relief is also available if

the state court has identified the correct legal principle but has unreasonably applied that

principle to the facts of the petitioner's case or has reached a decision based on an unreasonable

factual determination.  *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Mere error

by the state court or mere disagreement on the part of this Court with the state court

determination is not enough; the standard is one of objective reasonableness.  *Id.  See also*

*Williams v. Taylor*, *supra*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable

application' inquiry should ask whether the state court's application of clearly established federal

law was objectively unreasonable").  State court determinations of underlying factual issues are

presumed to be correct, and the petitioner has the burden to rebut that presumption with clear and

convincing evidence.  28 U.S.C. § 2254(e)(1).

## Substantive Review

## Confrontation Rights Violation

### *Claim 1: Hearsay Testimony*

Relying upon *Bullcoming v. New Mexico,* 564 U.S. 647 (2011), the petitioner asserts that

his confrontation rights were violated when Wanda Pezant was allowed to testify with regards to

the "Rape Kit" for L.R., which testimony included the contents of the examiner's interview of

L.R. and forensic findings made after a physical examination and scientific testing.  L.R. was

examined by Christy Bronould, but Bronould was not called to testify at trial.  Rather, Wanda

Pezant, Bronould's supervisor, testified as an expert.  According to her testimony, at the time of

the examination, Pezant was responsible for overseeing all rape exams performed by the nurses,

which included all documentation generated by those nurses in addition to being the statewide

coordinator for the sexual assault nurse examiner program.  Over the objection of defense

counsel, Pezant was allowed to testify as the contents of Bronould's report, which was admitted

into evidence without objection.  Pezant testified that the report noted that L.R. was crying and her eye contact was poor, and testified as to the findings of the examination conducted in connection with L.R.'s complaint of oral, anal, and vaginal rape.

The petitioner asserts, pursuant to *Bullcoming*, that his Sixth Amendment rights under the Confrontation Clause were violated when Pezant, rather than Bronould, was called to testify regarding the examination performed by Bronould.  The question presented in *Bullcoming* was whether the Confrontation Clause permits the prosecution to introduce a forensic laboratory report containing a testimonial certification – made for the purpose of providing a particular fact – through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification.  The Court held that such testimony did not satisfy the Confrontation Clause.  However, as explained by the Court in *Grim v. Fisher*, 816 F.3d. 296 (5th Cir. 2016), the Court in *Bullcoming* did not clearly establish the categorical rule that when the prosecution introduces a forensic laboratory report, the only witness whose in-court testimony can satisfy the Confrontation Clause is the analyst who performed the underlying analyses.

Citing to Justice Sotomayer's concurring opinion where she emphasized the limited reach of the Court's opinion in *Bullcoming*, the Fifth Circuit has noted "even after *Bullcoming,* it is not clear whether the testimony of the analyst in this case—who supervised and worked in the same lab as the analyst who did the actual testing—would violate the Confrontation Clause."  *See U.S. v. Johnson,* 558 F. App'x. 450, 453 (5th Cir. 2014).  In the instant matter Pezant was Bronould's supervisor, and was responsible for reviewing Bronould's work.  There is no clearly established federal law which would require the testimony of Bronould, and only Bronould, to satisfy the Confrontation Clause.

Even if the Court were to assume a Confrontation Clause error, such errors are subject to a harmless error analysis. In analyzing whether a Confrontation Clause error is harmless, the reviewing court should consider, "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, ... and, of course, the overall strength of the prosecution's case. *Delaware v. Van Arsdall,* 475 U.S. 673 (1986). When the record is so evenly balanced that there is grave doubt as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict, the error is not harmless. *O'Neal v. McAninch,* 513 U.S. 432 (1995).

As noted by the trial court in denying the petitioner's PCR claim, "...the victim did testify at trial, and the fact that she was raped was established by the testimony of other witnesses, and, more importantly, by the Petitioner's confession." Furthermore, Pezant's testimony was cumulative. L.R. testified as to her demeanor, characterizing herself as hysterical and noting that she was administered medication in order to calm her down following the exam. The petitioner has not shown that the alleged error had a substantial and injurious effect or influence in determining the jury's verdict. As such, the trial court's denial of the petitioner's PCR claim was not contrary to, or an unreasonable application of, clearly established federal law.

### Claim 2: Failure to Disclose Informal Plea Deal

The petitioner asserts that he was denied his right to adequately confront his accusers due to the State's failure to disclose an informal plea deal made with witness Jacquin James. James testified regarding the armed robbery and aggravated kidnapping of Marc Verret.

The State is obligated to disclose information that could be used to impeach the testimony of a witness for the government, including any agreements with government witnesses for testimony in return for monetary benefit or for more favorable treatment within the criminal justice system. *See Giglio v. United States,* 405 U.S. 150 (1972). The disclosure of plea agreements is particularly important where the case against the defendant depended almost entirely upon the testimony of cooperating witnesses. *Giglio,* 405 U.S. at 154–55.

In denying the petitioner's PCR claim, the trial court concluded that the petitioner failed to show that there was any undisclosed deal between the State and James. James testified at trial, on December 6, 2007, that no deals had been made with the State in exchange for his testimony, and that he hoped that by telling the truth, consideration would be given to him with regards to the charges then pending against him. On cross-examination, James testified that he had nothing to gain by testifying, and that he was simply hoping for the best. He further testified that he hoped that by telling the truth he could "get the slack off of me" with regards to his then pending criminal charges. As such, the testimony of James does not support the plaintiff's claim that the State failed to disclose a deal made with James in exchange for his testimony.

The petitioner supplemented the record with regards to this claim, and has provided this Court with a copy of correspondence from attorney Frank Holthaus, counsel for James, directed to prosecutor Dana Cummings. The correspondence is dated August 22, 2008, and reads in part, "When we last spoke in court, I thought it was a good idea to keep these matters "undetermined" so as to encourage him to do well by keeping the hammer over his head…In any event, under these circumstances perhaps you would consider dismissing the charges against Jacquin sooner, rather than later." The correspondence is completely consistent with James' testimony on the issue and that no deal had been reached. The petitioner argues that James' counsel would not

have pursued a "no deal" strategy without some sort of inducement to do so. The petitioner's arguments are speculation, and are unsupported by the record before the Court. As such, the trial court's denial of relief did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**Right to an Impartial Jury**

*Claim 3: Non-Unanimous Verdict*

The petitioner claims that his conviction by a non-unanimous jury verdict violated his Sixth Amendment right to trial by jury. Louisiana Constitution article I, § 17(A) and Louisiana Code of Civil Procedure article 782(A) provide that cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to reach a verdict. The petitioner was tried before a twelve person jury, and eleven jurors voted to convict the petitioner.

The petitioner argues that the United States Supreme Court decision in *Apodaca v. Oregon*, 406 U.S. 404 (1972) holding that non-unanimous jury verdicts do not violate a defendant's constitutional rights, has been called into question by *McDonald v. City of Chicago, Ill*, 561 U.S. 742, wherein the Court noted in a footnote that the *Apodaca* decision was the result of an unusual division amount the Justices. *See McDonald*, 561 U.S. at 766, n. 14. The petitioner's argument is without merit.

Since deciding *Apodaca,* the United States Supreme Court has repeatedly declined to grant certiorari to reconsider the constitutionality of non-unanimous verdicts in state proceedings. *See, e.g., Barbour v. Louisiana,* 562 U.S. 1217 (2011); *Herrera v. Oregon,* 562 U.S. 1135 (2011); and *Jackson v. Louisiana,* 134 S.Ct. 1950 (2014). As noted by Justice Stevens in his dissent in *McDonald*, the United States Supreme Court has resisted a uniform approach to

the Sixth Amendment's criminal jury guarantee, and the repeated denials of certiorari confirm

the proposition that the "incorporation" of a provision of the Bill of Rights into the Fourteenth

Amendment does not, in itself, mean the provision must have precisely the same meaning in both

contexts. *See McDonald,* 561 U.S. at 867-868.

As such, the law of *Apodaca* remains settled. The petitioner can claim no violation of

federal law from his conviction by a non-unanimous verdict.

### Claim 4: Exclusion of African American Jurors

The petitioner alleges that the State intentionally excluded African Americans from the

jury by using peremptory challenges and challenges for cause to exclude ten of the eleven

African Americans in the jury pool. The United States Supreme Court held in *Batson v.*

*Kentucky,* 476 U.S. 79 (1986)*,* that an equal protection violation occurs when a party uses a

peremptory challenge to exclude a prospective juror on the basis of race. Whether there has been

intentional racial discrimination is a question of fact, *Moody v. Quarterman,* 476 F.3d 260, 266

(5th Cir. 2007), and the trial court's evaluation of discriminatory intent is to be accorded great

deference on review, and should not be reversed unless it is clearly erroneous. *Id.*

As noted by the state trial court, the petitioner has not identified any particular panelist

who was likely struck based on his or her membership in a cognizable group. Furthermore, a

review of the record reveals that several of the African American panelists were struck for race

neutral reasons. Sydney Eatmon was struck due to financial hardship which would render him

unable to concentrate during the trial. Leo Gable was struck due to his position that he would be

unable to judge another. Michael Roszya's child had been molested at a young age, and though

he reported the crime the State failed to prosecute the perpetrator. Mr. Roszya did not feel he

could be fair due to these circumstances and was struck. Olivia Guillory took issue with the

possibility of the defendant receiving a life sentence, and was struck.  Sandras Comeaux was struck because she indicated that she would be unable to put aside that her brother had been convicted of armed robbery, and died while incarcerated.  Noah Williams was struck at the suggestion of the Court due to the fact that his father had shot a police officer and was serving a 30 year sentence.

There is nothing in the record that rebuts the determination of the trial court that the State's expressed reasons for exclusion were non-pretextual and were legitimate grounds for exercise of the challenges against the prospective jurors at issue.  Accordingly, the trial court's denial of relief did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

## Miranda Warning Violation

### Claim 5: Knowing and Intelligent Waiver/Failure to Honor Request for Attorney

The petitioner alleges that his confession was coerced and that the interviewing officers denied his request to speak to an attorney in violation of *Miranda v. Arizona,* 384 U.S. 436 (1966).  In *Miranda v. Arizona,* the Supreme Court recognized that custodial interrogations, by their very nature, generate "compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. 436, 467 (1966).  *Miranda* imposed on the police an obligation to follow certain procedures in their dealings with the accused including the requirement that prior to the initiation of questioning, they must fully apprise the suspect of the State's intention to use his statements to secure a conviction, and must inform him of his rights to remain silent and to "have counsel present ... if [he] so desires."  *Id.,* at 468–470.  Beyond this duty to inform, *Miranda* requires that the police

respect the accused's decision to exercise the rights outlined in the warnings. *Id.,* at 473–474. 1627.

*Miranda* holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." 384 U.S., at 444. There are two inquiries to determine whether an accused has voluntarily and knowingly waived his Fifth Amendment privilege against self-incrimination. *Moran v. Burbine,* 475 U.S. 412, 421 (1986). First, the waiver of the right must be voluntary in that it was not the product of intimidation, coercion, or deception. *Id.* Second, the relinquishment must be made with a full awareness of the nature of the right being waived. *Id.* The admission of an involuntary confession is trial error subject to a harmless error analysis. *Arizona v. Fulminante,* 499 U.S. 279, 310 (1993).

For a defendant to establish that his confession was involuntary, he must demonstrate that it resulted from coercive police conduct and it is essential that there be a link between the coercive conduct of the police and the confession of the defendant. *Colorado v. Connelly,* 479 U.S. 157, 163–65 (1986). Any evidence that the accused was threatened, tricked, or cajoled into a waiver will show that the defendant did not voluntarily waive his privilege. *Miranda v. Arizona,* 384 U.S., at 476. Trickery or deceit is only prohibited to the extent that it deprives the defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them. *Soffar v. Cockrell,* 300 F.3d. 588, 596 (5th Cir. 2002). "Neither mere emotionalism and confusion, nor mere trickery will alone necessarily invalidate a confession." *Self v. Collins,* 973 F.2d 1198, 1205 (5th Cir. 1992) (internal quotations and citation omitted).

The standard for determining whether a confession is voluntary is whether, taking into consideration the "totality of the circumstances," the statement is the product of the accused's "free and rational" choice. *United States v. Ornelas–Rodriguez,* 12 F.3d 1339, 1347 (5th Cir. 1994) (quoting *Martinez v. Estelle,* 612 F.2d 173, 177 (5th Cir. 1980)). A confession is not rendered involuntary simply because a suspect is advised that "there are advantages to cooperating." *United States v. Ornelas–Rodriguez,* 12 F.3d 1339, 1348 (5th Cir. 1994). "It is reasonable to assume that the cooperation of an arrested person often is prompted by a desire for leniency for himself or others," and statements made in such circumstances are not per se involuntary. *United States v. Robertson,* 582 F.2d 1356, 1368 (5th Cir. 1978).

Prior to trial, the petitioner filed a Motion to Suppress, which did not include a claim that he had requested an attorney. The petitioner's Motion was denied by the state trial court, and that decision was affirmed on appeal where the petitioner's additional claim was considered. *See State v. Edwards,* 08-2011 (La. App. 1 Cir. 6/12/09), 2009 WL 1655544.

In reviewing the trial court's decision, the appellate court summarized the evidence pertaining to the petitioner's confession as follows: "Sergeant Tillman Cordell Cox of the Baton Rouge City Police Department (BRPD) testified at the motion to suppress hearing that he was the first officer to interview the defendant after he turned himself in. Sergeant Cox read the defendant his Miranda rights. The defendant indicated that he understood his rights and did not initially give a statement, except to say that he did not have anything to do with the offenses. The interview was terminated, and the defendant was booked. The State asked Sergeant Cox if the defendant requested an attorney, and he responded negatively. Sergeant Cox testified that the defendant was not threatened, not made any promises, and did not appear to be under the influence of alcohol or drugs.

The defendant was subsequently interviewed by Detective Greg Fairbanks of the BRPD. Detective Fairbanks testified at the motion to suppress hearing that he read the defendant his Miranda rights, and a waiver of rights form was executed.  The defendant confessed to involvement in the armed robberies and the rapes, including details that had not yet been released to the public.  During direct examination by the State, Detective Fairbanks specifically testified that the defendant did not ask for an attorney at any point.  The second half of the interview with Detective Fairbanks was recorded.  On cross-examination, the defense attorney asked Detective Fairbanks if the defendant was offered an attorney or advised of his right to an attorney, and Detective Fairbanks responded positively.  The defense counsel further asked if the defendant rejected that right, and Detective Fairbanks stated that the defendant signed the waiver of rights form acknowledging that he understood he had the right to counsel and chose to make statements in the absence of counsel.  The defense counsel then asked if the defendant understood that he had the right to counsel at the time of the interview after his arrest, and Detective Fairbanks stated that he made that point very clear to the defendant.  Detective Fairbanks also testified that there were no promises or threats and that the defendant did not appear to be under the influence of drugs or alcohol.

Lieutenant John Attuso of the BRPD, who was present during the untaped portion of Detective Fairbanks' interview of the defendant and participated in the questioning of the defendant, testified at the motion to suppress hearing.  Lieutenant Attuso confirmed that the defendant was informed of his rights and that he indicated he understood them.  Lieutenant Attuso also testified that the defendant did not invoke his right to counsel.  Lieutenant Attuso testified that the defendant was not threatened or coerced, that no promises were made, and that the defendant did not seem to be under the influence of alcohol or drugs.

Sergeant Cox further questioned the defendant after the interview by the other officers, and the defendant made further statements at that point. Although the defendant was concerned with the length of incarceration that he was subject to, no promises were made. During the argument portion of the motion to suppress hearing, the defense counsel stated that the basis for the motion to suppress was to show that the evidence did not support the confession and that the defendant was given information that he admitted. Based on the testimony presented at the hearing and the defendant's demeanor on the videotape, the trial court found that the confession was not coerced and was freely and voluntarily given.

During the defendant's trial testimony, the defendant testified that he confessed to the instant offenses because, "it was more of a force and being naive and soft-hearted, [I] really wanted to help at the same time." The defendant further testified that the portion of the interview when force was used was not recorded. The defendant specified that Detective Fairbanks and another officer, whose name he could not recall, took him in a room, chained him to a wall, read his Miranda rights, and asked if he wanted an attorney. The defendant added, "I told him, yeah, but they act[ed] like they was [sic] ignoring me." The defendant also testified that he was informed that he would not need an attorney if he cooperated.

The defendant did not reference in the motion to suppress, nor argue before the trial court, that he was questioned after asserting his right to counsel. At the motion to suppress hearing, the defense counsel only questioned one of the three witnesses as to whether the defendant asked for an attorney, and this witness replied that the defendant did not. The defendant did not testify or offer any testimony regarding an assertion of his right to counsel.

Although the defendant subsequently presented trial testimony regarding an assertion of his right to counsel, this testimony was in direct conflict with testimony presented by all three

officers at the motion to suppress hearing.  Moreover, although the defendant claims otherwise, his trial testimony regarding his request for an attorney was rebutted during the trial.  During the trial, on cross-examination, the defense attorney asked Detective Fairbanks if the defendant ever asked for an attorney, and he responded, "No, ma'am."

During the videotaped confession, the defendant expressed hesitancy only to the extent that he was concerned about the number of years of incarceration he would receive.  There was no indication that the defendant asked for an attorney.  The confession contained ample, unprompted, highly detailed facts that were consistent with statements given by the victims herein, including timelines and locations.  Further, there was no indication that the confession was being made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises."  *See State v. Edwards,* 08-2011 (La. App. 1 Cir. 6/12/09), 2009 WL 1655544.

This Court has independently reviewed the record provided to the Court, and consideration of the evidence before the state trial courts supports the finding that the petitioner has not carried his burden to rebut the presumption of correctness of the trial court's factual findings by clear and convincing evidence, as he is required to do by § 2254(e)(1).[1]  The petitioner's confession claim is without merit.

## Due Process Violation

### Claim 6:  Vouching for Credibility of Witness

The petitioner asserts that his due process guarantees were violated when the prosecutor made inflammatory and prejudicial comments by vouching for the credibility of detective Fairbanks, and insinuating that the jury served a representative function.  During closing arguments the prosecution, echoing the statements of defense counsel, stated: "When we started

---

[1] The Court was not provided with a copy of the recorded portion of the petitioner's confession; however, the recorded portion was shown to the jury and testimony was elicited regarding the same.

this trial, in opening statement, counsel for the defense said this was a journey for justice.  I don't usual agree with defense counsel, but in that statement, I do, this is a journey for justice."  During rebuttal argument on closing, the prosecutor, in response to the defense's statement in closing that Detective Fairbanks was a chaplain and a liar, stated:  "Does Detective Fairbanks have any reason at all to convict an innocent man?  Absolutely not.  He's a chaplain.  He's been a Detective for a long time.  He's got a good career.  He's not going to get up there – He's out for justice like the rest of us."

      Considering the prosecution's conduct within the context of the entire trial, the Court does not find that such conduct rises to the level of error that rendered the petitioner's trial fundamentally unfair.  Pursuant to *Brecht v. Abrahamson*, 507 U.S. 619 (1993), "a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict."  *Nixon v. Epps*, 405 F.3d 318, 329-30 (5th Cir. 2005).  It is only when the record is so evenly balanced that there is grave doubt as to whether the error had a substantial and injurious effect or influence in determining the jury's verdict that the error is not harmless.  *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  *See also Anderson v. Warden, Louisiana State Penitentiary*, 2013 WL 1405423, *3 (W.D. La. Mar. 19, 2013) ("[E]rrors in the form of improper prosecutorial comment or jury instructions are subject to harmless error analysis [under *Brecht*] ... which asks whether the error had a substantial and injurious effect or influence in determining the jury's verdict").  Based upon a review of the record, the Court does not find that the prosecutor's comments, evaluated in the context of the entire trial, rendered the petitioner's trial fundamentally unfair.  The evidence adduced at trial, provided ample evidence of the petitioner's guilt, and the offending comments complained of by

the petitioner were not focused upon or emphasized and did not have a substantial injurious effect or influence in determining the verdict.

First, with regard to the petitioner's assertion that the prosecution vouched for the credibility of detective Fairbanks, during closing argument, the Court finds, based upon the totality of the circumstances in this case, that the conduct of the prosecution in seemingly vouching for Fairbanks' credibility was not so persistent and pronounced as to render the petitioner's trial fundamentally unfair, and that the evidence was not so insubstantial that in all probability, but for the prosecutor's remarks, the petitioner would not have been convicted. While it is true that a prosecutor is not generally allowed to vouch for the credibility of a witness where there is an underlying implication that the prosecutor's statements are based on additional personal knowledge about the witness or about facts not in evidence, such comments are not necessarily improper if it is apparent to the jury that the views are based on an interpretation of the evidence presented at trial rather than on personal knowledge of facts outside the record.  *See Nicolos v. Scott*, 69 F.3d 1255 (5th Cir. 1995).  *See also Tyler v. Cain*, 2016 WL 1594609, *13 (W.D. La. Mar. 24, 2016), *citing United States v. Ellis*, 547 F.2d 863, 869 (5th Cir. 1977) ("The proper inquiry into this issue should be 'whether the prosecutor's expression might reasonably lead the jury to believe that there is other evidence, unknown or unavailable to the jury, on which the prosecutor was convinced of the accused's guilt.")  In the instant matter, detective Fairbanks was questioned at trial regarding his position as a chaplain.  The fact that he was a chaplain was also noted by the defense during closing arguments.  There was no underlying implication that the prosecutor's statements were based on additional personal knowledge about the witness.

In addition, the petitioner's complaint relates to a comment made by the prosecution during rebuttal argument on closing.  In this regard, it is well-recognized that the prosecution is

granted greater leeway in bolstering the credibility of a witness during rebuttal argument when the prosecution is responding to attacks on such credibility by the defense.  *United States v. Ajaegbu*, 139 F.3d 898 (5th Cir. 1998) ("[T]he government may present a bolstering argument 'in rebuttal to assertions made by the defense counsel in order to remove any stigma cast' upon a witness").  *See also United States v. Young*, 470 U.S. 13 (1985) (recognizing that comments made by the prosecution to "right the scale" and respond to attacks upon credibility by the defense will not necessarily warrant reversal).  Inasmuch as it was clear in this case that the petitioner's principal defense was that he was coerced into giving a confession by detective Fairbanks, and that the testimony of detective Fairbanks, was not credible, the prosecution was entitled to respond.

With regards to the prosecutor's "justice" comments, the Court does not find that the prosecutor's comments were so persistent or pronounced that they permeated the entire atmosphere of the trial, violated the petitioner's substantial rights, or infected the trial with unfairness.  Further, to the extent that these comments were objectionable, the Court is unable to conclude that they rendered the petitioner's trial fundamentally unfair.  "A criminal defendant seeking a reversal of his conviction for prosecutorial misconduct 'bears a substantial burden,'" and the Fifth Circuit has declined to reverse convictions even where the prosecutor's comments were admittedly inflammatory.  *United States v. Delgado*, 672 F.3d 320, 337 (5th Cir. 2012), *quoting United States v. Virgen-Moreno*, 265 F.3d 276, 290 (5th Cir. 2001). As stated in *United States v. Delgado, supra*:

> Overturning a jury verdict for prosecutorial misconduct is appropriate only when, taken as a whole in the context of the entire case, the prosecutor's comments prejudicially affect[ed the] substantial rights of the defendant.  In determining whether the defendant's substantial rights were affected, we consider three factors: (1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the

evidence supporting the conviction.  If the evidence to support a conviction is strong, then it is unlikely that the defendant was prejudiced by improper arguments of the prosecutor and reversal is not required.  *Id.* at 337 (citations and internal quotation marks omitted).

In the instant case, the magnitude of any prejudicial effect is insubstantial.  The prosecutor echoed the statements made by the defense during opening argument.  Further, although no cautionary instruction was requested or given, the jury was informed by the court that statements made by the prosecution were not evidence.  *See United States v. Ramirez*, 61 F. App'x. 121 (5th Cir. 2003); *Ayo v. Cain*, 2015 WL 8475523 *31 (E.D. La. Oct. 26, 2015) ("The jurors were properly instructed that they were not to consider the prosecutor's arguments as evidence, and '[j]urors are presumed to follow their instructions' ").  Finally, the evidence against Petitioner was significant.  Accordingly, in evaluating the prosecutor's comments in the context of the trial as a whole, this Court is unable to conclude that the comments had a substantial injurious effect upon the verdict in this case or that the state court made an unreasonable determination in concluding that this claim did not have merit.

## RECOMMENDATION

It is recommended that the petitioner's application for habeas corpus relief be denied, with prejudice.  It is further recommended that, in the event that the petitioner seeks to pursue an appeal, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on April 24, 2018.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**